IN RE DISBARMENT PROCEEDING AGAINST RUSSELL D. FARRIS.—105 S. W. (2d) 921.

Court en Banc, June 5, 1937.

*Edgar Shook* and *Paul Barnett* for informants.

1208

R. H. *Musser*, *Pross T. Cross* and *Gerald Cross* for Russell D. Farris.

GANTT, J.—Original action in disbarment by the Bar Committee of the Eleventh Judicial Circuit against respondent Russell D. Farris, an attorney of Ray County and a member of the bar of this court.

The petition is in five counts charging said Farris with unprofessional conduct and praying for the revocation of his license to practice law in this State. The committee dismissed as to the third count. The answer was a general denial. In due course the evidence was heard by our commissioner, Hon. John L. Plowman of the Marion County Bar. He reported as follows:

"At the outset there is a matter of evidence on behalf of the Respondent relating to all the charges, viz.: There was evidence offered in the cause that Russel D. Farris had previously borne a good reputation in the community where he was born, resided and practiced, for truth and good citizenship; and I find as a fact, from all the evidence, the previous character of Respondent for truth and good citizenship, was good. As a matter of law, I conclude that the previous good character of Respondent is a fact to be considered in passing upon his guilt or innocence of the charges herein made; for one, whose character is good is less likely to commit the acts here charged than one whose character is not good; but, if all the evidence, including the evidence that was given touching the previous good character of Respondent showed him to have been guilty of the unprofessional conduct charged, then his previous good character cannot justify, excuse, palliate or mitigate the same.

"The First Specification charges that Respondent in fixing the amount of his fee of $1,000 for defending one, James Russell, on a felony charge, told him that amount was necessary for the reason that he (Farris) had to pay or divide the money between the Prose-

cuting Attorney, the Sheriff and the Judge of the Court; which statement was untrue.

"From all the evidence on this charge, I find that in September, 1934, James Russell, a farmer of about thirty-nine years of age, living near Richmond, Missouri, and engaged in feeding live stock, bought two loads of corn from four men. The corn was stolen from a car on the Wabash Railroad track. The four men were charged with the theft and James Russell was charged with the receiving of stolen corn; he had never been connected with any criminal matter before, and he consulted with his friends and relatives in Ray County as to what he should do. The Sheriff advised him to employ Russell D. Farris to defend him, and offered to go with him to effect the arrangement; however, James Russell and his brother-in-law, Robert Walker called at the office of Russell D. Farris in Richmond, Missouri, with a view of retaining him to defend the charge. In the first instance, Russell D. Farris sought to impress upon James Russell the gravity of the charge, and the matter of fee being brought up, wanted $1500.00. James Russell testified that the proposition made to him by Russell D. Farris was $1500.00 to get him out of his trouble and 'put his feet back on the farm' without any trial or further notoriety, or $750.00 merely to defend him in Court; that paying $1500.00 was the 'sure way' to get him out. The amount of this $1500.00 fee being objected to because James Russell could not raise that amount of money, and thought the fee too high, Farris finally said he would get Russell out the 'sure way' for $1,000.00, or $750.00 to defend him in the trial of the case in court; that Farris said, in justification of that charge he was making, that the Sheriff, the Prosecuting Attorney and the Judge would have to be taken car of. Robert Walker, present at the time, understood the arrangement to be $1,000.00 to get James Russell out of the criminal charge the 'sure way,' or $750.00 merely to defend him in Court.

"This is denied by Respondent, who states he advised James Russell that in order to properly defend him, it would be necessary to defend the four men charged with stealing the corn, and since they had no money or way of getting any, it would be necessary for Russell to pay for their defense.

"Two of the four men charged with stealing the corn testified as witnesses on behalf of Respondent, that James Russell endeavored to get them to testify against Respondent in these proceedings and they refused; that Russell D. Farris was still their attorney defending them on the charge of stealing the corn, which case was still pending in the Circuit Court of Ray County, never having been tried; one testified that James Russell offered him $600.00 to testify and the other stated that James Russell told him the sure way to get out of the trouble was to testify against Farris in this proceeding. The exact statements James Russell wanted these wit-

nesses to make is not clear, except such statements would be unfavorable to Respondent in this proceeding. I find from their testimony that James Russell was active in his endeavor to secure witnesses against Respondent in this proceeding, but I do not find that he used any improper means in relation thereto; it is not found or established that he offered one of them $600.00 or any amount for testifying.

"I conclude from all the evidence relating to this charge, that James Russell and his brother-in-law, Robert Walker, understood from their conference with Respondent, that for the payment of the $1,000.00, which was in fact paid, Respondent would procure the dismissal or other favorable outcome of this charge without a trial and without further notoriety or trouble to James Russell, and that the procurement of such a result involved the payment of part of the fee to others, possibly the sheriff, prosecuting attorney and judge; that such understanding was brought about by what Respondent said in fixing the amount of his fee; that Respondent knew that James Russell and his brother-in-law so understood the matter and did or said nothing to correct such understanding on their part.

"There was no evidence that any part of said fee was paid by Respondent to any other person.

"As a matter of law relating to this charge, I conclude, that it is unlawful and unprofessional conduct for a lawyer to expressly or impliedly represent or state to a client or any person, or create the impression that he could or would use money exacted as a fee, to influence the sheriff, prosecuting attorney or judge of the court in connection with litigation pending before them; and further, that if the lawyer knew or has any reason to believe that such client or other person has received any such impression from what the lawyer has said or done, then it becomes the professional duty of such lawyer actively and publicly to correct such idea or thought on the part of others. In no surer way can the confidence of the people in the Courts and the administration of justice be broken than by such conduct on the part of a member of the Bar, and especially is this true when he deals with the ignorant, the credulous and those of criminal tendencies.

"The Second Specification charges, that Respondent attempted to bribe the prosecuting attorney of Carroll County, Missouri, one Wade W. Maupin, to dismiss a criminal charge pending in the Circuit of said County against one Frank Behmer, Jr.

"From all the evidence relating to this specification, I find that one Frank Behmer, Jr., about January, 1934, was confirmed in the jail of Carroll County, Missouri, charged with grand larceny for stealing corn and clover seed; that Respondent had been retained to defend him; that shortly before the preliminary hearing on said

charge in the Justice Court, Respondent called at the office of Wade W. Maupin, the prosecuting attorney of said Carroll County, Missouri, and asked if the case against Behmer could be dismissed upon payment of the costs accrued. He was informed by Maupin that it could not be dismissed. Thereupon, Respondent pulled some money out of his pocket and laid it on the table, stating there is the money to pay the costs; and that the amount was Fifty ($50.00) Dollars; the prosecuting attorney informed him the costs would not amount to over $8.00 or $10.00, but Respondent replied in effect —there was the money to pay the costs, that it was money that did not belong to him and was to be spent, and he did not care what became of the money; upon again being informed the case would not be dismissed and that the costs could not be disposed of in that way, Respondent departed, taking the money with him.

"There was evidence that Farris was at the time under the influence of liquor; in fact—drunk.

"Upon leaving the office of the prosecuting attorney, Respondent stopped in the adjoining room, being the office of Wm. W. Wall, Justice of the Peace before whom the proceeding against Behmer was pending, and stated to the Justice, 'I can not do anything with Maupin;' and upon the Justice inquiring what was meant, said: 'I want to get the case dismissed against Behmer.' The Justice informed him he could not do anything about that; whereupon, Farris stated, 'I have some money here and you fellows might just as well have it.' Upon being again informed by the Justice of the Peace that he could not dismiss the case, Respondent took his money and departed.

"On the same day Respondent called at the jail and wanted to pay the board bill of the sheriff for feeding the prisoner, Behmer, and asked the release of the accused from the jail thereby.

"From all the evidence relating to this charge, I find there could be but one reason for displaying of money to the prosecuting attorney of Carroll County, Missouri, and making statements to the Justice of the Peace to the effect that he had 'some money here and you fellows might just as well have it' on this occasion, viz.: to excite the cupidity of these officers whereby they might be unlawfully influenced in the discharge of their official duties.

"I conclude, as a matter of law, that the conduct of Respondent in displaying $50.00 in money in the office of the prosecuting attorney of Carroll County, Missouri, for the alleged purpose of paying the costs in the criminal proceeding pending in said County against Frank Behmer, Jr., as admitted by him as a witness in the cause; especially when he should have known as a lawyer and was informed by the prosecuting attorney, that such costs would not exceed $8.00 or $10.00; and further, where such a display of money was accompanied by the statements made by Respondent, that the money was

1212

there to be spent and he did not care what became of it, constituted an attempt to improperly influence the officers of the Court in the discharge of their official duty, was an unlawful and intemperate appeal to their cupidity, and was unlawful and unprofessional conduct upon his part as a lawyer and as a member of the Bar of this Court.

"The Fourth Specification charges that Respondent, Russell D. Farris, having been employed as attorney to represent one Alfred Williams charged with driving a motor car while intoxicated, about April, 1934, stated to said Williams in the presence of his wife, that the Sheriff of Ray County, Missouri, demanded $300.00 to be paid as a condition for the release of said Williams from jail. That Farris knew no charge was pending against said Williams and that he was being illegally detained; that after the payment of the money Williams was released and no charge was brought against him.

"From all the evidence on this Specification, I find that said Alfred Williams during the prohibition era had been a 'boot-legger,' had several experiences with the 'law'; his place had been raided by the State authority and he had paid fines upon his pleas of guilty in the State Courts; that he had been raided by the Federal authority and had served a term in the Federal penitentiary upon his plea of guilty for violation of the Prohibition law. In these matters he had been represented by the Respondent, Russell D. Farris.

"In April, 1934, Williams had parked his automobile on one of the streets in the City of Richmond, Missouri, and had been about the town on various matters for some time; afterwards, being about ready to return to his home he was arrested by the sheriff of Ray County, Missouri, who saw that he was intoxicated and inquired what he was doing and where he was going. He replied he was going to drive his car home. The sheriff told him he could not, and locked him up in jail, where he was kept for three days, and then released as hereinafter shown.

"Isabelle Williams, wife of Alfred, was informed of his predicament and went to the jail with bondsmen, in an endeavor to get her husband released on bail, but the sheriff refused to accept the bondsmen or release Williams. It seems that the sheriff had informed the Prosecuting Attorney of the arrest and from the record of the proceedings before Justice Ben Tucker, introduced in evidence, it appears that an affidavit had been filed in the Justice Court by Eugene Farris, the prosecuting attorney and brother of Russell D. Farris, charging Williams with driving a motor car while intoxicated; a preliminary hearing was set and the defendant (Williams) remanded to the Sheriff of Ray County, although no notice of this proceeding or knowledge that the proceeding was filed was ever given to or had by Williams or his wife.

"Failing in her efforts to secure the release of her husband from jail upon bail tendered the sheriff, Mrs. Williams went to see Russell D. Farris, who had represented them in their other matters, and she testified he told her he could get her husband out for $300.00; that the sheriff demanded $300.00 cash before he would relelase Williams. The latter statement was denied by Farris, as a witness in the cause, his version being, that he required $300 for his services in defending Williams on the charge—which was a felony.

"Be this as it may, after Mrs. Williams had succeeded in borrowing $300.00 from a friend, she and Farris went to the jail where, in the presence of the sheriff and Farris, she handed the money to her husband who counted it out and laid it on a table. Thereupon, a bail bond signed by the same sureties previously offered was accepted by the sheriff and Williams and his wife walked away, and that was the last they have ever been bothered about the matter. No preliminary hearing was had and there were no entries in the Justice's docket showing any disposition of the case.

"Respondent testified that he had called at the Justice's office and procured a bail bond and had it executed by the sureties before he went to the jail.

"Eugene Farris, the then prosecuting attorney, testified that after further investigation of the case he found he had no testimony that Williams was driving the car while intoxicated; the only witness he had was the sheriff who never saw Williams in his car. He therefore paid no further attention to the case and it was dropped.

"Respondent testified that his charge of $300.00 for defending a felony charge was reasonable, and the fact that he was able to secure the release of his client with so little trouble—because of lack of evidence on the part of the State—was just one of the 'breaks' that some times comes to lawyers to compensate for more difficult cases. He denied that he told Mrs. Williams or any one that he had to or would divide the $300.00 with the sheriff or that the sheriff was demanding $300.00 for the release of Williams.

"I am satisfied from all the testimony, that Respondent knew the Williams were under the impression that the sheriff was demanding $300.00 in cash and they did not understand the $300.00 paid by them was Respondent's fee. I am further satisfied that Respondent knew the Williams were under such misapprehension and did nothing to remove it.

"As a matter of law I conclude, that inaction and passive silence on a lawyer's part, where he knows or has good reason to believe his client is under the impression that money required by and paid to the lawyer as his fee for defending a criminal charge against the client is exacted by the sheriff as a condition of his release from jail, constitutes unprofessional conduct deserving the censure of the court.

"The Fifth Specification charges that the Respondent, Russell D. Farris, was guilty of unprofessional conduct as a lawyer in instigating a fraudulent conveyance and having the same placed of record for the purpose of deceiving persons interested in the financial standing of the maker of said fraudulent conveyance.

"From all the evidence relating to this specification, I find that in October, 1933, one Ben Carpenter, was charged with the crime of arson in Ray County, Missouri, and employed the respondent, Russell D. Farris, to defend him. It seems that the property burned belonged to Carpenter and it was claimed that the fire was set to collect the insurance he had on the buildings; also it was claimed that Carpenter had hired one —— Farmer, jointly charged with him, for a purported consideration of $50.00 to actually start the fire. A severance was had and Farmer was acquitted and Carpenter sentenced to a term in the penitentiary where he is now confined.

"Roger Dinkenbaugh, son-in-law of Carpenter and his father, Hugh Rinkenbaugh, accompanied Carpenter to the office of Respondent at the time the latter was employed to defend the case. They testified that the fee agreed upon was $750.00, of which Carpenter paid $500.00 in cash at the time. That at the time it was rumored or understood that an effort would be made by the insurance company that had paid the insurance on the burned buildings, to recover the money paid by it to Carpenter. It was also understood that Carpenter had certain real property unencumbered and non-exempt, out of which a judgment obtained by the insurance company might be made. That Carpenter inquired of Respondent how he could be protected should such civil suit be brought against him; that Respondent advised that he could give a deed of trust sufficient to cover the value of the property—for $2000.00—and that if judgment were obtained in such suit it could not be collected. This was agreed to and Respondent prepared the papers, viz.: a note payable to Respondent for $2,000.00, secured by a deed of trust on the real property being the only property held by Carpenter that might be subject to execution. That thereupon, Carpenter stated to Respondent, that he only owed him a balance of $250.00 on his fee and he had nothing to show that he did not owe the full $2000.00 if Respondent should die and his estate should demand payment of the note and deed of trust; that thereupon Respondent stated he would arrange this, and prepared a paper writing to the effect that Carpenter was entitled to a credit of $1750.00 on his $2000.00 note that day executed, and advised Carpenter that said paper writing and statement would be full protection to him in the event of Respondent's death.

"Respondent testifying as a witness in the cause, stated that he advised Carpenter that in order that he might be properly defended it would be necessary to defend Farmer, who had no means; that

there was danger of Farmer testifying for the State unless he was taken care of, and that Carpenter would have to pay an additional $750.00 for defending Farmer. That Carpenter agreed to this. That the $2000.00 note was drawn to cover the balance of $250.00 due on account of Carpenter's fee and $750.00 due on account of Farmer; that the balance would be available to defend Carpenter should the civil suit be brought by the insurance company; that Carpenter stated that Respondent would possibly earn all of it before he got through with the case. The question arising what would happen to the defense in case Respondent should die, the latter stated he could fix that by giving a paper showing that Carpenter had a credit on the note of $1750.00 in the event of Respondent's death.

"However, I find the paper credit which was not on the note but on a separate slip of paper, reads as follows:

" 'Richmond, Mo. October 2, 1933.

" 'Benj. D. Carpenter, Jr.,

" 'Camden, Mo.

" 'Dear sir:

" 'You are entitled to a credit on the $2000 note I hold of yours dated Oct. 2, 1933, and secured by mortgage on property in Camden, Mo., of $1750.00.

" 'Respectfully,

" 'Russell D. Farris.'

"No credit was endorsed on the note itself. The deed of trust securing the note was immediately recorded in the deed records of Ray County, Missouri.

"It appeared from the oral testimony that some legal proceedings are now pending in court between the insurance company, paying the loss on the destroyed buildings, and Russell D. Farris, which proceeding seeks the recovery of the insurance money paid and the setting aside of said deed of trust, but the record of said proceedings was not offered in evidence.

"By means of this deed of trust and the recordation thereof in the real estate records of Ray County, Missouri, it is made to appear that Carpenter was indebted to Respondent in amount $2000.00, secured by deed of trust on the only property he owned subject to execution; whereas, by means of the paper credit for $1750.00, executed by Respondent and delivered to Carpenter at the time of the execution of the note and deed of trust, Carpenter owed only $250.00. It further appears, and I find, that at the time Carpenter was apprehensive that a judgment would be sought against him by the insurance company and said deed of trust was made by him for the fraudulent purpose of placing his property beyond the reach of his creditors; that Respondent, at the time knew all the facts surrounding this transaction, including the making of the fraudulent deed of trust and other papers, and actually drafted all of them.

"I conclude, as a matter of law, it is unlawful and unprofessional conduct for a lawyer to participate in any transaction which he knows to be fraudulent, or to knowingly assist or advise in any transfer of property made for the purpose of hindering, delaying or defrauding creditors. The making of a note for $2000.00, secured by a deed of trust and placing the same of record by one threatened with a claim for money, is a fraudulent act, where the actual indebtedness to the payee of the note is only $250.00, and this is abundantly shown where the payee of the note simultaneously with its delivery gives the maker a written credit for $1750.00 not endorsed on the note itself.

"I conclude and find on the whole case, as a matter of law, that Specifications I, II, IV and V have been sustained, and that Specification III has not been sustained."

Respondent filed exceptions, contending that there was no substantial evidence to support the findings of the commissioner.

On the first count he argues that witness James Russell is a "criminal and bribe giver," and for that reason his testimony should not be considered. The witness was charged with knowingly receiving stolen corn. He had not been convicted. In this proceeding respondent also is charged with offenses criminal in their nature. It follows that if the testimony of witness Russell should be disregarded, the testimony of respondent also should be disregarded. Likewise, if bribery was intended, respondent was involved and equally guilty. The commissioner properly considered the testimony of both the witness Russell and respondent.

In this connection it should be stated that respondent did not deny that he made the unusual requirement that Russell pay him the one thousand dollars in five, ten and twenty dollar bills. It also should be stated that Eugene Farris, brother of respondent and prosecuting attorney, did not deny that James Russell conferred with him on the day the case was first for trial, and that he (Eugene Farris) told said Russell to pay the one thousand dollars to respondent. Furthermore, Robert Walker, brother-in-law of James Russell, corroborates the testimony of said Russell as to the contract of employment. There was no impeachment of the witness Walker.

On the question respondent directs attention to the testimony of Russell on direct examination that he did not employ respondent to defend the men charged with stealing the corn; whereas, on cross-examination he testified that he had to pay respondent for defending said men. The statement on cross-examination was made in view of respondent's contention that he was defending said men under employment by Russell.

On the second count respondent did not deny the testimony of the prosecuting attorney and justice of the peace of Carroll County. After approaching said prosecuting attorney and justice of the

peace with an offer to pay the costs on dismissal of the charge against Behmer, he approached the sheriff, to whom he offered to pay for the corn and board of Behmer while in jail. Of course, the sheriff could not release Behmer. He resented the conduct of respondent and ordered him from the jail premises.

On the fourth and fifth counts respondent contends that no ''creditable'' evidence supports the findings of the commissioner. In effect he argues that the commissioner should have taken his testimony as true and disregarded the testimony of other witnesses, including the facts and circumstances in evidence. The commissioner properly gave consideration to all the evidence on said counts.

The commissioner's findings of fact and conclusions of law on counts one, two, four and five of the petition are approved and adopted as the opinion of this court.

It is ordered that the license of respondent to practice law in this State be and the same is hereby suspended for a period of one year from this date and until the payment of the costs of this proceeding. *Douglas, Ellison, Frank* and *Tipton, J.,* and *Hays, C. J.,* concur.